**MATERN LAW GROUP, PC**
Matthew J. Matern (SBN 159798)
matern@maternlawgroup.com
Mikael H. Stahle (SBN 182599)
mstahle@maternlawgroup.com
Irina A. Kirnosova (SBN 312565)
ikirnosova@maternlawgroup.com
2101 E. El Segundo Blvd., Suite 403
El Segundo, California 90245
Telephone: (310) 531-1900
Facsimile: (310) 531-1901

Attorneys for Plaintiffs OBED VILLATORO and CLEMENCIA MARTINEZ, individually and on behalf of all others similarly situated

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

OBED VILLATORO and CLEMENCIA MARTINEZ, individually, and on behalf of all other similarly situated employees,

Plaintiffs,

vs.

WAL-MART ASSOCIATES, INC., a Delaware corporation; and DOES 1 through 50, inclusive,

Defendants.

Case No. 2:25-cv-04448-ODW-MAA

Honorable Otis D. Wright II

**SECOND AMENDED COMPLAINT**

**<u>CLASS ACTION</u>**

1. Failure to Provide Meal Periods
2. Failure to Authorize and Permit Rest Breaks
3. Failure to Pay All Wages Due to Discharged and Quitting Employees
4. Failure to Furnish Accurate Itemized Wage Statements
5. Failure to Indemnify Employees for Necessary Expenditures Incurred in Discharge of Duties
6. Unfair and Unlawful Business Practices

**DEMAND FOR JURY TRIAL**

Plaintiffs OBED VILLATORO and CLEMENCIA MARTINEZ ("PLAINTIFFS"), individually and on behalf of all others similarly situated, hereby allege as follows:

**JURISDICTION AND VENUE**

1. PLAINTIFFS originally filed this action in the Superior Court of the State of California, County of Contra Costa, on December 19, 2024, as a class action brought pursuant to California Code of Civil Procedure section 382.

2. On February 24, 2025, DEFENDANT removed this action to the United States District Court for the Northern District of California under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. section 1332(d)(2) and 28 U.S.C. sections 1441, 1446, 1453 on the contentions that PLAINTIFF'S complaint (a) involved 100 or more putative class members; (b) the amount in controversy exceeds $5,000,000, exclusive of interest and costs; and (c) PLAINTIFF is a citizen of a state different from that of at least one defendant.

3. On May 9, 2025, the United States District Court for the Northern District of California ordered this action transferred to this District.

**THE PARTIES**

4. PLAINTIFF VILLATORO is a resident of the State of California and was an employee of DEFENDANT during the relevant time period. At times material to this complaint, PLAINTIFF VILLATORO was employed by DEFENDANT as a full-time non-exempt employee at DEFENDANT'S Walmart store #3455, located in the City of Richmond in the County of Contra Costa, California. PLAINTIFF VILLATORO worked for DEFENDANT as a General Facilities Maintenance Technician from approximately August 1, 2022 to June 6, 2024. His job duties included making in-store renovations and repairs, including tile, plumbing, electrical, and other building and construction work.

5. PLAINTIFF MARTINEZ is a resident of the State of California and was an employee of DEFENDANT during the relevant time period. At times

MATERN LAW GROUP, PC
2101 E. EL SEGUNDO BL., SUITE 403
EL SEGUNDO, CA 90245

material to this complaint, PLAINTIFF MARTINEZ was employed by DEFENDANT as a full-time non-exempt employee at DEFENDANT'S Walmart Supercenter store #3796, located in the City of Ontario in the County of San Bernardino, California. PLAINTIFF MARTINEZ worked for DEFENDANT as a Deli Associate from approximately March 2020 to February 1, 2024. Her job duties included preparing hot food, making salads and sandwiches, servicing and checking out customers, and keeping the deli clean and sanitized.

6. PLAINTIFFS are informed and believe, and thereon allege, that DEFENDANT operates a chain of approximately 280 retail stores in California.

7. PLAINTIFFS are informed and believe, and thereon allege, that DEFENDANT WAL-MART ASSOCIATES, INC. is, and at all times relevant hereto was, a Delaware corporation. PLAINTIFFS are further informed and believe, and thereon allege, that WAL-MART ASSOCIATES, INC. is authorized to conduct business, and conducts business, in the State of California. Specifically, WAL-MART ASSOCIATES, INC. maintains offices and facilities, conducts business, and engages in unlawful practices or policies in the County of Contra Costa.

8. The true names and capacities of DOES 1 through 50, inclusive, are unknown to PLAINTIFFS at this time, and PLAINTIFFS therefore sue such DOE defendants under fictitious names. PLAINTIFFS are informed and believe, and thereon allege, that each defendant designated as a DOE is in some manner highly responsible for the occurrences alleged herein, and that PLAINTIFFS and the other CLASS MEMBERS' injuries and damages, as alleged herein, were proximately caused by the conduct of such DOE defendants. PLAINTIFFS will seek leave of the Court to amend this Complaint to allege their true names and capacities of such DOE defendants when ascertained. DEFENDANT WAL-MART ASSOCIATES, INC. and DOES 1 through 50 are collectively referred to herein as "DEFENDANT" or "WALMART."

9. At all relevant times herein, DEFENDANT WAL-MART ASSOCIATES, INC. and DOES 1 through 50 were the joint employers of PLAINTIFFS and the other CLASS MEMBERS. PLAINTIFFS are informed and believe, and thereon allege, that at all times material to this complaint DEFENDANT WAL-MART ASSOCIATES, INC. and DOES 1 through 50 were the alter egos, divisions, affiliates, integrated enterprises, joint employers, subsidiaries, parents, principals, related entities, co-conspirators, authorized agents, partners, joint venturers, and/or guarantors, actual or ostensible, of each other. Each defendant was completely dominated by his, her or its co-defendant, and each was the alter ego of the other.

10. At all relevant times herein, PLAINTIFFS and the other CLASS MEMBERS were employed by DEFENDANT under employment agreements that were partly written, partly oral, and partly implied. In perpetrating the acts and omissions alleged herein, DEFENDANT WAL-MART ASSOCIATES, INC. and DOES 1 through 50, and each of them, acted pursuant to, and in furtherance of, their policies and practices of not paying PLAINTIFFS all wages earned and due, through methods and schemes which include, but are not limited to, failing to provide PLAINTIFFS and the other CLASS MEMBERS with compliant meal periods; failing to authorize and permit PLAINTIFFS to take compliant rest breaks; failing to provide PLAINTIFFS and the other CLASS MEMBERS accurate itemized wage statements; and failing to compensate PLAINTIFFS and the other CLASS MEMBERS for necessary expenditures, in violation of the California Labor Code and the applicable Industrial Welfare Commission ("IWC") Wage Order.

11. PLAINTIFFS are informed and believe, and thereon allege, that each and every one of the acts and omissions alleged herein were performed by, and/or attributable to, DEFENDANT WAL-MART ASSOCIATES, INC. and DOES 1 through 50, each acting as agents and/or employees, and/or under the direction and

control of, each of the others, and that said acts and failures to act were within the course and scope of said agency, employment and/or direction and control.

12. PLAINTIFFS bring this action on behalf of themselves and the following similarly situated class of individuals ("CLASS MEMBERS"): All current and former non-exempt employees of DEFENDANT'S Walmart retail stores in the State of California during the period of December 19, 2020 through the time this action settles or proceeds to final judgment ("CLASS PERIOD").

13. PLAINTIFFS further bring this action on behalf of themselves and the following similarly situated subclass of individuals ("SUBCLASS MEMBERS"): All current and former non-exempt employees of DEFENDANT'S Walmart retail stores in the State of California who, while employed after June 3, 2021 ("SUBCLASS PERIOD"), did not receive a smartphone under the Connected Associates Program.

14. As a direct and proximate result of the unlawful actions of DEFENDANT, PLAINTIFFS and the other CLASS MEMBERS have suffered, and continue to suffer, from losses as yet unascertained, but subject to proof at trial, and within the jurisdiction of this Court.

## <u>CLASS ACTION ALLEGATIONS</u>

15. This action is appropriately suited for a class action because:

a. The potential class or classes is of a significant number. Joinder of all current and former employees individually would be impracticable.

b. This action involves common questions of law and fact because the action focuses on DEFENDANT's unlawful practices and policies, which are applied to all non-exempt employees in violation of the Labor Code, the applicable IWC Wage Order, and the Business and Professions Code which prohibits unfair business practices arising from such violations.

c. PLAINTIFFS' claims are typical of the claims of the class or classes they seek to represent because DEFENDANT subjected all non-exempt

employees to the same violations of the Labor Code, the applicable IWC Wage Order, and the Business and Professions Code.

d. PLAINTIFFS will fairly and adequately protect the interests of all CLASS MEMBERS, as they do not have any conflicts of interest with the CLASS MEMBERS and have retained counsel experienced in wage-and-hour class actions.

e. The class action device is superior to other available methods for fairly and efficiently adjudicating the controversy.

**FIRST CAUSE OF ACTION**

**Failure to Provide Meal Periods**

**[Cal. Labor Code §§ 226.7, 512; IWC Wage Order No. 7-2001, § 11]**

**(By PLAINTIFFS, on behalf of themselves and all CLASS MEMBERS, against DEFENDANT)**

16. PLAINTIFFS incorporate herein by specific reference, as though fully set forth, the allegations in the foregoing paragraphs.

17. During the CLASS PERIOD, DEFENDANT failed to provide PLAINTIFFS and the other CLASS MEMBERS with compliant meal periods under California Labor Code §§ 226.7 and 512 and IWC Order No. 7-2001, § 11, including failing to ensure PLAINTIFFS and the other CLASS MEMBERS the opportunity to take a duty-free, uninterrupted 30-minute meal period beginning before the end of their fifth hour of work, while refraining from impeding or discouraging them from availing themselves of such meal periods.

18. During their employment with DEFENDANT, PLAINTIFFS worked daily shifts exceeding five (5) hours each week, entitling them to receive a compliant meal period for each such shift, yet DEFENDANT impeded their ability on a weekly basis to receive an uninterrupted 30-minute meal period beginning before the end of their fifth hour of work by requiring them to perform or complete assigned work tasks and/or to serve customers before or during their meal period.

19. DEFENDANT further violated California Labor Code §§ 226.7 and IWC Wage Order No. 7-2001, § 11 by failing to pay PLAINTIFFS and the other CLASS MEMBERS one additional hour of compensation at their regular rate of pay (a.k.a. as a "meal period premium") for each day on which they did not receive a compliant meal period and by engaging in a pattern and practice of adjusting the timekeeping entries of PLAINTIFFS and the other CLASS MEMBERS so as to make it appear they received timely meal periods when in fact they did not.

20. Approximately 2-3 times, but not less than once, in each workweek during the period of the middle of November of 2023 until he voluntarily left his employment with DEFENDANT in June of 2024, PLAINTIFF VILLATORO was unable to take a meal period beginning before the end of his fifth hour of work due to the nature of the work projects he had been assigned, which because time was of the essence had to be completed before he was permitted to take his meal period. Store Manager Shaikh (first name) had admonished PLAINTIFF VILLATORO that he must complete such assigned work projects before beginning a meal period.

21. During the same approximately seven-month period from the middle of November 2023 until June 2024, Joel St. John, PLAINTIFF VILLATORO'S immediate manager, repeatedly told him and his co-workers in weekly Zoom calls that took place each Wednesday that they were not permitted to begin their meal periods *after* the end of their fifth hour of work, and if they ever did, he (Mr. St. John) would personally adjust their time records to reflect that they had taken a meal period that began *before* the end of their fifth hour of work.

22. During the same approximately seven-month period, PLAINTIFF VILLATORO did the following each pay period: checked his wage statement to determine if he had been paid a meal period premium for the instances in which he had been unable to to take a meal period beginning before the end of his fifth hour of work; logged onto OneWalmart (the official portal for Walmart associates) to review his time records; and discovered that his time records had been adjusted to

reflect meal periods beginning *before* the end of the fifth hour of work on days when he had in fact been unable to begin his meal period before the end of the fifth hour of work, as described above, and had in fact—and accurately—clocked out for his meal period *after* the end of the fifth hour of work.

23. While working for Walmart, including during said approximately seven-month period, PLAINTIFF VILLATORO made it his practice to, and did, enter his time clock entries accurately and in real time. Thus, he did not enter or adjust time entries causing them to reflect that an event had occurred at a time when it did not.

24. During the same approximately seven-month period, PLAINTIFF VILLATORO was on approximately five occasions unable to take a meal period at all during his shift for the same reasons that he was unable to take *timely* meal periods, as described above. In other words, on those approximately five occasions, PLAINTIFF VILLATORO'S workload and assigned work projects, which he was required to complete before taking a meal period, were so voluminous and time-consuming that he simply was unable to take a meal period during his shift.

25. On the occasions when PLAINTIFF VILLATORO was unable to take a meal period at all, as described above, his manager, Joel St. John, directed him to enter time entries in the timekeeping system to reflect that he had taken a meal period, even though he had not. When PLAINTIFF VILLATORO refused to do so, which was every time he was so directed, Mr. St. John proceeded to enter time entries in PLAINTIFF VILLATORO'S time records to reflect that PLAINTIFF VILLATORO had taken a meal period—even though he had taken none—and a timely one at that.

26. On numerous occasions during the seven-month period, PLAINTIFF VILLATORO complained to Mr. St. John that because Mr. St. John adjusted his time records, he was being deprived of meal period premiums, or "California meal penalties" as PLAINTIFF VILLATORO referred to them in their conversations.

Mr. St. John responded to PLAINTIFF VILLATORO that he adjusted the time records of PLAINTIFF VILLATORO and his co-workers because Regional Manager Randy Dunne was "getting on me because we're passing our fifth" (referring to the act of taking a meal period after the end of the fifth hour).

27. At least once a week throughout her employment with DEFENDANT, PLAINTIFF MARTINEZ was interrupted during her meal period and called back to the service deli by her immediate manager, Rosie Padilla, to assist customers with orders because the deli did not have sufficient staffing to handle the large number of orders customers made at lunch time. On these occasions, PLAINTIFF MARTINEZ was deprived of a compliant meal period because she was unable to complete a full 30-minute uninterrupted meal period.

28. At least once a week throughout her employment with DEFENDANT, PLAINTIFF MARTINEZ was unable to take a meal period beginning before the end of her fifth hour of work, also due to the deli not having sufficient staffing to handle the large number of orders customers made around lunch time. On these occasions, PLAINTIFF MARTINEZ alerted her manager that "my fifth hour is here." In response, Ms. Padilla usually told her to finish her work and that she (Ms. Padilla) would "fix it later," which meant log into PLAINTIFF MARTINEZ'S time records and make time entries reflecting that she had taken a meal period that began before the end of her fifth hour of work. In some instances, rather than "fix" PLAINTIFF MARTINEZ'S time records as her manager, Ms. Padilla instructed PLAINTIFF MARTINEZ to do it herself.

29. Ms. Padilla had taught PLAINTIFF MARTINEZ how to adjust her own time records during the early part of PLAINTIFF MARTINEZ'S employment with DEFENDANT. Ms. Padilla had pulled up PLAINTIFF MARTINEZ'S time records on the computer terminal situated between the lunch room and the human resources office and walked her through the process of adjusting time clock entries to reflect a different time for an event than was originally entered.

30. Ms. Padilla also showed PLAINTIFF MARTINEZ how to enter missing time entries. This was important because, as PLAINTIFF MARTINEZ learned from Ms. Padilla and her co-workers, the way Walmart and store management wanted employees to handle a situation where they went past the fifth hour without having started their lunch was to deliberately *not* clock out when they eventually went to lunch. Instead, they should take a lunch lasting until the end of the sixth hour (one hour after the end of the fifth hour); clock back in from lunch; and, when the timekeeping system alerts them that they "forgot" to clock out for lunch, enter an out-punch for exactly the end of the fifth hour. The resulting time record shows the employee received an hour lunch, as Walmart's lunch break policy purports to provide, while the employee received an actual lunch (not a timely one but that fact is now buried) of at least 30 minutes.

31. PLAINTIFFS are informed and believe, and thereon allege, that the other CLASS MEMBERS suffered meal period violations similar or identical to the foregoing.

32. As a proximate result of the aforementioned violations, PLAINTIFFS and the other CLASS MEMBERS have been damaged in an amount according to proof at trial and seeks all wages earned and due, interest, penalties, expenses, and costs of suit.

## SECOND CAUSE OF ACTION

### Failure to Authorize and Permit Rest Breaks

### [Cal. Labor Code § 226.7; IWC Wage Order No. 7-2001, § 12]

### (By PLAINTIFFS, on behalf of themselves and all CLASS MEMBERS, against DEFENDANT)

33. PLAINTIFFS incorporate herein by specific reference, as though fully set forth, the allegations in the foregoing paragraphs.

34. During the CLASS PERIOD, DEFENDANT failed to authorize and permit compliant rest breaks to PLAINTIFFS and the other CLASS MEMBERS as

required under California Labor Code § 226.7 and IWC Wage Order No. 7-2001, § 12.

35. During their employment with DEFENDANT, PLAINTIFFS worked daily shifts exceeding five (5) hours each week, entitling them to receive one duty-free 10-minute rest break for every four hours of work, or major fraction thereof, of each such shift, yet DEFENDANT impeded their ability on a weekly basis to receive such a rest breaks by requiring them to perform or complete their assigned work tasks and serve customers in lieu of taking their rest breaks or by prohibiting them from leaving DEFENDANT'S premises during their rest breaks. As a result, PLAINTIFF MARTINEZ was rarely, if ever, able to take a second rest break, and PLAINTIFF VILLATORO was rarely, if ever, able to take rest break at all.

36. DEFENDANT further violated California Labor Code §§ 226.7 and IWC Wage Order No. 7-2001, § 12 by failing to pay PLAINTIFFS one additional hour of compensation at their regular rate of pay for each day on which they did not receive a required rest break.

37. PLAINTIFFS are informed and believe, and thereon allege, that the other CLASS MEMBERS suffered rest break violations similar or identical to the foregoing.

38. As a proximate result of the aforementioned violations, PLAINTIFFS and the other CLASS MEMBERS have been damaged in an amount according to proof at trial, and seek all wages earned and due, interest, penalties, expenses, and costs of suit.

## THIRD CAUSE OF ACTION

**Failure to Pay All Wages Due to Discharged and Quitting Employees**

**[Cal. Labor Code §§ 201, 202, 203]**

**(By PLAINTIFFS, on behalf of themselves and all CLASS MEMBERS, against DEFENDANT)**

39. PLAINTIFFS incorporate herein by specific reference, as though fully

set forth, the allegations in the foregoing paragraphs.

40. Pursuant to California Labor Code §§ 201 and 202, DEFENDANT is required to pay all earned and unpaid wages to an employee who is discharged or quits. California Labor Code § 201 mandates that if an employer discharges an employee, the employee's wages accrued and unpaid at the time of discharge are due and payable immediately. Furthermore, pursuant to California Labor Code § 202, DEFENDANT is required to pay all earned wages due to an employee no later than 72 hours after the employee quits his or her employment, unless the employee provided 72 hours previous notice of his or her intention to quit, in which case the employee is entitled to his or wages at the time of quitting.

41. California Labor Code § 203 provides that if an employer willfully fails to pay, in accordance with California Labor Code §§ 201 and 202, any wages of an employee who is discharged or quits, the employer is liable for waiting time penalties in the form of continued compensation to the employee at the same wage rate for up to 30 workdays.

42. During the CLASS PERIOD, DEFENDANT willfully failed to pay accrued meal period and rest break premium wages to PLAINTIFFS and the other CLASS MEMBERS for the violations described herein in accordance with California Labor Code §§ 201 and 202.

43. As a result, PLAINTIFFS and the other CLASS MEMBERS are entitled to all available statutory penalties, including the waiting time penalties provided in California Labor Code § 203, together with interest thereon, as well as other available remedies.

///

///

///

**FOURTH CAUSE OF ACTION**

**Failure to Furnish Accurate Itemized Wage Statements**

**[Cal. Labor Code § 226; IWC Wage Order No. 7-2001, § 7]**

**(By PLAINTIFFS, on behalf of themselves and all CLASS MEMBERS, against DEFENDANT)**

44. PLAINTIFFS incorporate herein by specific reference, as though fully set forth, the allegations in the foregoing paragraphs.

45. Pursuant to California Labor Code § 226, DEFENDANT is required to provide timely and accurate itemized wage statements in writing showing each employee's gross wages earned, total hours worked, all deductions made, net wages earned, the name and address of the legal entity or entities employing the employee, and all applicable hourly rates in effect during each pay period and the corresponding number of hours worked at each hourly rate.

46. During the CLASS PERIOD, DEFENDANT knowingly and intentionally failed to provide PLAINTIFFS and the other CLASS MEMBERS timely and accurate itemized wage statements in writing showing each employee's earned but unpaid meal break premium wages having accrued as a result of DEFENDANT'S failure to provide compliant meal breaks, in violation of California Labor Code § 226 and IWC Wage Order No. 7-2001, § 7.

47. During the CLASS PERIOD, PLAINTIFFS and the other CLASS MEMBERS suffered injury, and continue to suffer injury, as a result of DEFENDANT'S failure to provide timely and accurate itemized wage statements, as PLAINTIFFS and the other CLASS MEMBERS could not promptly and easily determine from the wage statement alone the gross and net wages earned in the pay period.

48. As a proximate result of DEFENDANT'S unlawful actions and omissions, PLAINTIFFS and the other CLASS MEMBERS have been damaged in an amount according to proof at trial, and seek all wages earned and due, plus

MATERN LAW GROUP, PC
2101 E. EL SEGUNDO BL., SUITE 403
EL SEGUNDO, CA 90245

interest thereon. Additionally, PLAINTIFFS and the other CLASS MEMBERS are entitled to all available statutory penalties, including but not limited to civil penalties pursuant to California Labor Code §§ 226(e) and 226.3 and an award of costs, expenses, and reasonable attorneys' fees, including but not limited to those provided in California Labor Code § 226(e), as well as other available remedies.

**FIFTH CAUSE OF ACTION**

**Failure to Indemnify Employees for Necessary Expenditures Incurred in Discharge of Duties**

**[Cal. Labor Code § 2802]**

**(By PLAINTIFF MARTINEZ, on behalf of herself and all SUBCLASS MEMBERS, against DEFENDANT)**

49. PLAINTIFFS incorporate herein by specific reference, as though fully set forth, the allegations in the foregoing paragraphs.

50. California Labor Code § 2802(a) requires an employer to indemnify an employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of her his or her duties, or of his or her obedience to the directions of the employer.

51. DEFENDANT has for years been utilizing its employees' personal cell phones as an integral part of store operations. Because this practice so pervades the work environment at DEFENDANT'S stores, the benefits DEFENDANT derives from incorporating employees' personal cell phones into store operations are compelling. Indeed, on June 3, 2021, DEFENDANT publicly announced that its reliance on employees' personal cell phones in store operations was so great that it finally was willing to pay for it—under a new program called the Connected Associates Program—by giving its employees free cell phones to use during and after work, along with a mobile app incorporating the many work-related functions employees for years had been performing from their personal cell

MATERN LAW GROUP, PC
2101 E. EL SEGUNDO BL., SUITE 403
EL SEGUNDO, CA 90245

phones. DEFENDANT acknowledged that "shared company handheld devices" and walkie-talkies never were sufficient for store employees to do their jobs:

> "Constant communication is essential for our business. Walkie talkies were one solution, but not every associate has one. [A smartphone] enables associates to instantly connect with one another, helping them work as a team to stay nimble and react to customers' needs."

> "It's more critical than ever to equip our people with the tools and technology they need for success."

52. Despite acknowledging its reliance on cell phone use by employees in store operations and despite committing to providing free cell phones to all store associates to avoid having to reimburse them for using their own cell phones, DEFENDANT failed to provide the promised smartphones to PLAINTIFF and the other SUBCLASS MEMBERS. As a result, PLAINTIFF and the other SUB-CLASS MEMBERS were deprived of the "tools and technology they needed for success" in a work environment in which DEFENDANT had determined that "constant communication is essential for our business." PLAINTIFF and the other SUBCLASS MEMBERS thus reasonably continued to use their own personal cell phones in DEFENDANT'S store operations to keep up with work demands and the need to quickly connect with co-workers and managers and react to customers' needs.

53. Throughout her employment with DEFENANT, PLAINTIFF was required to use her personal cell phone to respond to calls from her manager, Rosie Padilla, during work hours and regarding matters relating to the operations of the service deli, online and in-store customer orders, and other matters relating to the service deli. PLAINTIFF was also required to respond to customer requests for information regarding the store's products by using her personal cell phone to look up information for customers because PLAINTIFF had not been given a smart-phone by DEFENDANT under the Connected Associates Program.

54. Despite knowing or having reason to know that PLAINTIFF and the other SUBCLASS MEMBERS incurred expenses by using their personal cell

phones in the service of DEFENDANT'S store operations, DEFENDANT failed to indemnify PLAINTIFF and the other SUBCLASS MEMBERS for the cell phone expenses they reasonably incurred in direct consequence of the discharge of their duties while working under the direction of DEFENDANT.

55. As a proximate result of DEFENDANT'S unlawful actions and omissions in violation of California Labor Code § 2802, PLAINTIFF and the other SUBCLASS MEMBERS have been damaged in an amount according to proof at trial, and seek reimbursement of all necessary expenditures, plus interest thereon pursuant to California Labor Code § 2802(b). Additionally, PLAINTIFF and the other SUBCLASS MEMBERS are entitled to all available statutory penalties and an award of costs, expenses, and reasonable attorneys' fees, including those provided in California Labor Code § 2802(c), as well as other available remedies.

**SIXTH CAUSE OF ACTION**

**Unfair and Unlawful Business Practices**

**[Cal. Bus. & Prof. Code §§ 17200 et. seq.]**

**(By PLAINTIFFS, on behalf of themselves and all CLASS MEMBERS, against DEFENDANT)**

56. PLAINTIFFS incorporate herein by specific reference, as though fully set forth, the allegations in the foregoing paragraphs.

57. Each and every one of DEFENDANT'S acts and omissions in violation of the California Labor Code and/or the applicable IWC Wage Order as alleged herein relating to DEFENDANT'S failure to pay all wages earned, including accrued but unpaid meal and rest break premium wages, and failure to indemnify PLAINTIFFS and the other CLASS MEMBERS for necessary expenditures and/or losses incurred in the discharge of their duties constitute unfair and unlawful business practices under California Business and Professions Code § 17200, *et seq*. PLAINTIFFS and the other CLASS MEMBERS were subjected to these acts and omissions during the CLASS PERIOD and are seeking a

MATERN LAW GROUP, PC
2101 E. EL SEGUNDO BL., SUITE 403
EL SEGUNDO, CA 90245

restitutionary remedy under the UCL for their resulting economic injuries because they lack an adequate remedy at law to redress them and to ensure they are compensated for the totality of *all* unpaid wages, including *all* accrued but unpaid meal and rest break premium wages, and *all* unreimbursed expenses incurred *throughout* the CLASS PERIOD.

58. DEFENDANT'S violations of California wage and hour laws constitute a business practice because DEFENDANT'S aforementioned acts and omissions were done repeatedly throughout the CLASS PERIOD, and in a systematic manner, to the detriment of PLAINTIFFS and the other CLASS MEMBERS.

59. DEFENDANT has avoided payment of all wages earned, all accrued meal and rest period premiums, and reimbursement for necessary expenditures and/or losses incurred in the discharge of duties as required by the California Labor Code and the applicable IWC Wage Order.

60. DEFENDANT'S acts and omissions violate the "unlawful" prong of the UCL by virtue of violating underlying predicate statutes without regard to whether any private right of action is provided under such statutes. The acts and omissions thus are independently actionable under the UCL and provide remedies not available at law.

61. DEFENDANT'S acts and omissions violate the "unfair" prong of the UCL independently of whether they also violate any statute. DEFENDANT'S acts and omissions constitute an "unfair" business practice because the injury to PLAINTIFFS and the other CLASS MEMBERS is substantial, is not outweighed by any countervailing benefits to themselves or to competition, and was not reasonably avoidable by them. Any utility of DEFENDANT'S acts and omissions is outweighed by the gravity of the harm to PLAINTIFFS and the other CLASS MEMBERS from those acts and omissions.

62. As a result of DEFENDANT'S unlawful and unfair business

practices, DEFENDANT has obtained and retained monies that constitute property belonging to PLAINTIFFS and the other CLASS MEMBERS, and members of the public. PLAINTIFFS and the other CLASS MEMBERS are entitled to restitution of all such monies to restore to them the wages and other compensation unlawfully and unfairly withheld from them in an amount according to proof at the time of trial.

63. As an express and integral part of the statutory scheme itself, "the remedies or penalties provided by the [the UCL] are cumulative to each other and to the remedies or penalties available under all other laws of this state." Cal. Bus. & Prof. Code § 17205. The purpose and intent of this statutory language, added by the Legislature in 1976 to expressly foreclose arguments that UCL remedies should not be available if the plaintiff had a remedy under another statute (such as damages under the Labor Code). *See* Act of Sept. 17, 1976, ch. 1005, 1976 Cal. Stat. 2378; Assem. Com. on Judiciary, Bill Digest for Assem. Bill No. 3279 (1975-76 Reg. Sess.) April 19, 1976, pp. 1-2. The remedies PLAINTIFFS seeks under the UCL on behalf of themselves and the other CLASS MEMBERS are thus available regardless of whether any other available remedy is adequate or inadequate.

64. Claims for violation of the UCL are subject to a limitations period of four (4) years. Cal. Bus. & Prof. Code § 17208. Claims for damages for violation of the California Labor Code are subject to a limitations period of three (3) years. Code Civ. Proc. § 338. Accordingly, the *only* remedies available to PLAINTIFFS and the other CLASS MEMBERS for the violations alleged under the First, Second, and Fifth Causes of Action for the December 19, 2020 to December 19, 2021 portion of the CLASS PERIOD are the remedies provided under the UCL. For that portion of the CLASS PERIOD, therefore, PLAINTIFF and the other CLASS MEMBERS have no remedy at law, adequate or otherwise.

///

///

**PRAYER FOR RELIEF**

WHEREFORE, PLAINTIFFS, individually and on behalf of all other persons similarly situated, respectfully pray for relief against DEFENDANT, as follows:

1. For compensatory damages in an amount to be ascertained at trial;

2. For restitution of all monies due to PLAINTIFFS the other CLASS MEMBERS resulting from DEFENDANT'S unlawful and unfair business practices;

3. For meal and rest period compensation pursuant to California Labor Code § 226.7 and IWC Wage Order No. 7-2001;

4. For reimbursement for necessary expenditures and/or losses incurred in the discharge of duties pursuant to California Labor Code § 2802;

5. For liquidated damages pursuant to California Labor Code §§ 1194.2 and 1197.1;

6. For waiting time penalties pursuant to California Labor Code § 203;

7. For statutory penalties according to proof, including but not limited to all penalties authorized by the California Labor Code § 226(e);

8. For interest on the unpaid wages and unreimbursed expenditures at 10 percent per annum pursuant to California Labor Code §§ 218.6, 1194, and 2802, California Civil Code §§ 3287 and 3288, and/or any other applicable provision providing for prejudgment interest;

9. For reasonable attorneys' fees and costs pursuant to California Labor Code §§ 218.5, 226, 1194, and 2802, California Civil Code § 1021.5, and any other applicable provisions providing for attorneys' fees and costs;

10. For an order of class certification permitting PLAINTIFFS to proceed on the First, Second, Third, Fourth, Fifth, and Sixth Causes of Action on a classwide basis;

11. For an order appointing PLAINTIFFS as class representatives and

PLAINTIFFS' counsel as class counsel; and

12. For such further relief that the Court may deem just and proper.

Dated: December 15, 2025 **MATERN LAW GROUP, PC**

By: */s/ Mikael H. Stahle*
MATTHEW J. MATERN
MIKAEL H. STAHLE
IRINA A. KIRNOSOVA

Attorneys for Plaintiffs OBED VILLATORO and CLEMENCIA MARTINEZ, individually and on behalf of all others similarly situated

**DEMAND FOR JURY TRIAL**

PLAINTIFFS, individually and on behalf of all others similarly situated, hereby demand a trial by jury on all issues so triable.

Dated: December 15, 2025

**MATERN LAW GROUP, PC**

By: */s/ Mikael H. Stahle*
MATTHEW J. MATERN
MIKAEL H. STAHLE
IRINA A. KIRNOSOVA

Attorneys for Plaintiffs OBED VILLATORO and CLEMENCIA MARTINEZ, individually and on behalf of all others similarly situated